1  SCOTT+SCOTT,
   ATTORNEYS AT LAW, LLP
2  WALTER W. NOSS (277580)
   wnoss@scott-scott.com
3  HAL CUNNINGHAM (243048)
   hcunningham@scott-scott.com
4  707 Broadway, Suite 1000
   San Diego, CA  92101
5  Telephone:  619/233-4565
   619/233-0508 (fax)
6

7  *Liaison Counsel for Plaintiff and the Putative Class*

8  **[Additional Counsel on Signature Page.]**

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
   GARY SILVERBERG, Individually and on          No.
   Behalf of All Others Similarly Situated,
12
                                                 CLASS ACTION COMPLAINT
                                    Plaintiff,
13
          vs.
14
   ENVIVIO, INC., JULIEN SIGNES, and ERIK
15 MILLER,

16                                  Defendants.

17

28 CLASS ACTION COMPLAINT

Plaintiff Gary Silverberg ("Plaintiff"), individually and on behalf of all persons similarly situated, by his undersigned attorneys, for his complaint against Defendants alleges the following based upon personal knowledge as to his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls, and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Envivio, Inc. ("Envivio" or the "Company"), securities analysts' reports and advisories about the Company, interviews with past Company employees and other individuals with personal knowledge, and information readily obtainable from public sources. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal class action on behalf of persons (the "Class") who purchased or otherwise acquired the Company's securities between April 25, 2012 and September 6, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule l0(b)-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa), and 28 U.S.C. §1331.

4. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.

CLASS ACTION COMPLAINT                                                                                                          1

5. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the attached Certification, purchased Envivio securities at artificially inflated prices during the Class Period and has been damaged as a result of the revelations by Defendants of their prior false statements and material omissions.

7. **Defendant Envivio** is a Delaware corporation with its principal offices located at 400 Oyster Point Blvd., Suite 325, South San Francisco, California 94080. Envivio provides software-based IP video processing and distribution solutions to mobile and broadband service providers, cable multiple system operators, and direct broadcast satellite service providers and content providers. Its solutions enable service providers and content providers to deliver linear broadcast and on-demand video services to their customers through multiple screens, such as TV, tablets, mobile handsets, netbooks, laptops, and PCs.

8. **Defendant Julien Signès** ("Signès") was, at all relevant times, President, Chief Executive Officer ("CEO"), and a director of the Company. Defendant Signè sold 91,615 shares of his Envivio stock in the IPO (defined herein) for gross proceeds of $824,535.

9. **Defendant Erik E. Miller** ("Miller") was, at all relevant times, Chief Financial Officer ("CFO") of the Company. Defendant Miller sold 25,863 shares of his Envivio stock in the IPO for gross proceeds of $232,767.

10. Defendants named above in ¶¶8-9 are referred to herein as the "Individual Defendants."

### DEFENDANTS' MATERIALLLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

11. The Class Period commences on April 25, 2012, when Defendants consummated the Company's Initial Public Offering ("IPO"), utilizing the Registration Statement to sell

CLASS ACTION COMPLAINT 2

1  7.755 million shares of the Company common stock to the public at $9 per share.  The IPO
2  raised approximately $70 million in gross proceeds for the Company and certain selling
3  shareholders, including the Company's officers and directors.

4      12.    The Registration Statement was false and misleading as it contained untrue
5  statements of material fact and omitted other facts necessary to make the statements made therein
6  not misleading.  For example, the Registration Statement represented the Company's growth
7  strategy as follows:

> ***Our Growth Strategy***
>
> Our objective is to become the leading multi-screen video delivery solution to service providers and content providers.  The key elements of our growth strategy are:
>
> - ***Capitalize on our early commercial leadership*** — We intend to exploit our lead in commercialization of our video processing and distribution solutions to expand our footprint of customers across leading service providers and content providers.
>
> - ***Continued innovation of our software-based, multi-screen solution*** — We intend to leverage our core IP video technology strength to develop new products with enhanced software-based capabilities to further demonstrate the value of our solution and increase our long-term revenue opportunities.
>
> - ***Increase our share of our customers' network footprint*** — We intend to expand our relationships with our customers by offering additional products, including the addition of mobile or IPTV capabilities or the extension of our services to new geographies or content offerings.

CLASS ACTION COMPLAINT                                          3

1
2
3
4
5
6
7
- *Maximize our sales distribution capabilities to add new customers* — We intend to further broaden our customer and geographic presence through expanded channel partnerships with new and existing partners. We also intend to further develop our direct sales capabilities to capitalize on the emerging and rapidly growing OTT market.

8
9
10
11
- *Extend our solution through complementary products* — We intend to develop new products and features for our customers through internal development, potential acquisitions and partnerships.

12  13. The Registration Statement also emphasized the Company's substantial increase
13 in total revenue and segment revenue for each of the past three years. As to the Company's
14 revenue, the Registration Statement showed a $14 million year increase for 2011 and a $20
15 million increase for 2012:

| ($ in thousands) | 2010 | 2011 | 2012 |
|---|---|---|---|
| Americas | $2,282 | $9,706 | $19,655 |
| Asia Pacific | $4,969 | $7.229 | $10,521 |
| EMEA | $9,037 | $13,069 | $20,470 |
|  | $16,288 | $30,004 | $50,646 |

20  14. The Registration Statement also highlighted the Company's substantial revenue
21 growth for each of the past three quarters leading up to the IPO, increasing from $9.9 million in
22 1Q12 to $11.5 million in 2Q12, from $11.5 million in 2Q12 to $13.7 million in 3Q12 and from
23 $13.7 million in 3Q12 to $15.5 million in 4Q12:

| ($ in thousands) | 1Q12 | 2Q12 | 3Q12 | 4Q12 |
|---|---|---|---|---|
| Americas | $3,026 | $4,737 | $4,703 | $7,189 |
| APAC | $2,569 | $4,630 | $2,314 | $1,008 |
| EMEA | $4,308 | $2,138 | $6,700 | $7,324 |
| Total | $9,903 | $11,505 | $13,717 | $15,521 |

28 CLASS ACTION COMPLAINT                                                                                  4

15. The Registration Statement emphasized the Company's trend of continuing strong revenue growth through fiscal year ending January 31, 2012, while failing to disclose that the Company's reported revenue trend had not only stopped, but had reversed, and was declining substantially by the time of the IPO, as the Company's existing customers had dramatically reduced spending. These adverse events – the decline in spending by the Company's customers and reversal in the Company's revenue growth – were known to Defendants at the time of the IPO.

16. Further, the "risk disclosures" used in the Registration Statement were themselves misleading as they omitted that the Company's revenue growth trend and growing demand for Company products had already reversed at the time of the IPO.

17. The Registration Statement represented that certain "risks" would or could adversely impact the Company's business and results going forward if they were to occur. These "risks" included a material decrease or delay in capital spending by the Company's service provider customers. The Registration Statement stated in relevant part:

> *We depend on the capital spending of telecommunications, cable and satellite service providers, as well as broadcast, media and Internet content providers for a substantial majority of our revenue and any material decrease or delay in capital spending in these industries would negatively impact our operating results, financial condition and cash flows*.
>
> . . . many of our customers in these markets purchase our products in connection with constructing and upgrading their architecture and systems, demand for our products will depend on the magnitude and timing of capital spending by our customers.
>
> \*   \*   \*

CLASS ACTION COMPLAINT                                                                                         5

> As a result of these capital spending issues, we may not be able to maintain or increase our revenue in the future, and our operating results, financial condition and cash flows could be materially and adversely affected. [Emphasis in original].

18. The Registration Statement's representation that a reduction in the Company's customers' capital spending may negatively affect the Company's financial was false and misleading because the Company customers had already reduced their spending on the Company's products and services.

19. On May 30, 2012, the Company held a conference call with investors, analysts, and other market participants,to discuss the Company's financial results for the 2013 first quarter. It was on this conference call that Defendant Miller stated in relevant part:

> ***The year-over-year increase reflects the overall growth in our business***, which has largely been driven by the growing adoption of multi-screen video by consumers around the world. 82% of our revenue was from existing customers, which demonstrates good predictability of our revenue stream. [Emphasis added].

20. On August 13, 2012, the Company issued a press release entitled, "Envivio Provides Preliminary Revenue Results for Second Quarter Fiscal 2013." Therein, the Company stated in relevant part:

> Envivio (NASDAQ: ENVI), a leading provider of live and on-demand multi-screen IP video processing and delivery solutions, today announced that it expects revenue for the quarter ending July 31, 2012 to be in the range of $10 million to $11 million, as compared to its previous guidance of $17 million to $18 million.

CLASS ACTION COMPLAINT     6

> "Our preliminary revenue results reflect a general slowdown in spending by our service provider customers, in particular in North America and Western Europe, which have been two key growth areas of the Company in the last two years," said Julien Signès, president and CEO, Envivio. "During the second quarter, we did not see any changes to our competitive positioning, and our win/loss ratio in the multi-screen market remains consistent with prior experience.  Despite this, we experienced a slowdown of major project implementations and a lengthening of sales cycles, which we attribute to the current global economic environment.  We are disappointed in these results and are conducting a full review of our operations. We will provide a further update in our full earnings release and related earnings call, scheduled for September 6, 2012."

21.  On this news, the shares of the Company's stock declined $3.22 per share, or 56.49% to close at $2.48 per share on August 14, 2012.

22.  After the close of the market on September 6, 2012, the Company issued a press release entitled, "Envivio Reports Second Quarter Fiscal 2013 Financial Results."  Therein, the Company stated in relevant part:

> Envivio (NASDAQ: ENVI), a leading provider of live and on-demand multi-screen IP video processing and delivery solutions, today announced financial results for the second quarter of fiscal 2013 ended July 31, 2012.

CLASS ACTION COMPLAINT                                                                 7

Financial Highlights

- Revenue for the second quarter of fiscal 2013 was $10.8 million, compared to $11.5 million in the second quarter of fiscal 2012.
- GAAP net loss for the quarter was $4.3 million, or $0.16 per share, compared to net income of $55,000, or $0.00 per share, in the second quarter of fiscal 2012.
- Non-GAAP net loss for the quarter was $3.5 million or $0.13 per share, compared to net income of $425,000 or $0.03 per share in the second quarter of fiscal 2012. A reconciliation of the difference between these non-GAAP financial measures with the most directly comparable GAAP measures, as well as a description of the items excluded from the non-GAAP measures, is included in the financial statements portion of this press release.

"Our results for the second quarter reflect project delays by our service provider customers and the impact of the macroeconomic environment. We are disappointed in our quarterly performance and have taken actions to reduce our cost structure," said Julien Signès, president and CEO, Envivio. "However, we do not view the revenue shortfall as indicative of the market backing away from multi-screen deployments. Our win rates have remained consistent and recent advances in our 4Caster and Muse encoding products as well as new features in our Halo network media processor strengthen our solution portfolio."

CLASS ACTION COMPLAINT                                                          8

1     23.     Additionally, also on September 6, 2012, the Company held a conference call
2 with investors, analysts, and other market participants, to discuss the Company's financial results
3 for the 2013 second quarter.  Defendants Signès and Miller were present.  Therein, Defendant
4 Signès stated in relevant part:

> […] Consistent with our announcement on August 13th, our revenue for the second fiscal quarter was $10.8 million, which was down 6% year-over-year and down 20% sequentially and significantly below our guidance.
>
> Let me review what happened in the quarter.  As we stated in our earlier announcements the short fall was primarily due to a general slowdown in spending by your service providers customers. This slowdown in spending materialized late in the quarter particularly in North America and Europe regions which comprise approximately 75% of revenue in the second quarter.
>
> In the second quarter, we experienced a significant number of project delays to latter quarters with our existing customers. While we always anticipate some delays in our forecast, the number of delays related to core business was significantly higher than past quarters.  The majority of those delays were due to longer budget cycles which resulted from the weakening global economic environment.  In one example a large existing customer in Western Europe had a $300,000 project scheduled to ship in fiscal Q2 that is now scheduled to ship in Q4.
>
> In addition with existing customer projects that were not delayed, we saw smaller than expected orders due to budgetary restrictions.  For example one of our North American Tier 1 operators had a $1.5 million project forecasted for the 2Q which

28  CLASS ACTION COMPLAINT                                                                                    9

> resulted in a 500K partial rollout. And the remaining order is now scheduled to be rolled out over the next several quarters. In addition customer caution resulted in longer sales cycles for new projects.
>
> While historically the RSP process has been in a three to six months range we are seeing new RSPs expected to take as long as 6 to 12 months to be completed. For instance, we expect it to close at $2 million project with a North American teleco in Q2 but the RSP has been lessened and we are now focusing this to be awarded in Q4.

24. On this news, shares of the Company's stock declined $0.46 per share, or 17.16% to close at $2.22 per share on September 7, 2012. This closing price of the Company common stock represented a cumulative loss of $6.78, more than 75%, of the value of the Company's shares at the time of the Company's IPO.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased or otherwise acquired the Company's securities between April 25, 2012 and September 7, 2012, inclusive, seeking to pursue remedies under the Exchange Act.

27. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

28. Record owners and other members of the Class may be identified from records maintained by Envivio or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CLASS ACTION COMPLAINT                                                                 10

1     29.     Plaintiff's claims are typical of the claims of the members of the Class as all
2  members of the Class are similarly affected by Defendants' wrongful conduct in violation of
3  federal law that is complained of herein.

4     30.     Plaintiff will fairly and adequately protect the interests of the members of the
5  Class and have retained counsel competent and experienced in class and securities litigation.

6     31.     Common questions of law and fact exist as to all members of the Class and
7  predominate over any questions solely affecting individual members of the Class.  Among the
8  questions of law and fact common to the Class are:

9         (a)     whether the federal securities laws were violated by Defendants' acts as
10 alleged herein;

11        (b)     whether statements made by Defendants to the investing public during the
12 Class Period misrepresented material facts regarding (i) the Company's historical revenue
13 growth; and (ii) the revenue from the Company's Americas segment;

14        (c)     whether the members of the Class have sustained damages and, if so, the
15 proper measure of damages.

16    32.     A class action is superior to all other available methods for the fair and efficient
17 adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as
18 the damages suffered by individual Class members may be relatively small, the expense and
19 burden of individual litigation make it impossible for members of the Class to individually
20 redress the wrongs done to them.  There will be no difficulty in the management of this action as
21 a class action.

22                                **LOSS CAUSATION**

23    33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused
24 the economic loss suffered by Plaintiff and the Class.

25    34.     During the Class Period, as detailed herein, Defendants made materially false and
26 misleading statements and were deliberately reckless such that the market was deceived and by
27 this course of conduct, the price of Envivio securities was artificially inflated and this

28 CLASS ACTION COMPLAINT                                                                    11

1  deliberately reckless course of conduct operated as a fraud or deceit on Class Period purchasers
2  of Envivio securities by misrepresenting (i) the Company's historical revenue growth; and
3  (ii) the revenue from the Company's Americas segment.  Later, when Defendants' prior
4  misrepresentations and material omissions became apparent to the market, the price of Envivio
5  securities fell precipitously, as the prior artificial inflation came out of the price.  As a result of
6  their purchases of Envivio securities during the Class Period, Plaintiff and other members of the
7  Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**Applicability of Presumption of Reliance: Fraud-on-the-Market Doctrine**

9  35. At all relevant times, the market for Envivio's securities was an efficient market
10 for the following reasons, among others:

11  (a) Envivio met the requirements for listing on the NASDAQ, a highly
12 efficient and automated market;

13  (b) During the Class Period, on average, millions of shares were traded
14 weekly, demonstrating a very active and broad market for Envivio securities and permitting a
15 strong presumption of an efficient market;

16  (c) As a regulated issuer, Envivio filed periodic public reports with the SEC;

17  (d) Envivio regularly communicated with public investors via established
18 market communication mechanisms, including through regular disseminations of press releases
19 on the national circuits of major newswire services and through other wide-ranging public
20 disclosures, such as communications with the financial press and other similar reporting services;
21 and

22  (e) Unexpected material news about Envivio was rapidly reflected and
23 incorporated into the Company's securities price during the Class Period.

24  36. As a result of the foregoing, the market for Envivio's securities promptly digested
25 current information regarding Envivio from all publicly available sources and reflected such
26 information in the price of Envivio's securities.  Under these circumstances, all purchasers of

28 CLASS ACTION COMPLAINT                                                                          12

Envivio's securities during the Class Period suffered similar injury through their purchase of Envivio's securities at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 Promulgated Thereunder Against Defendants

37. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

38. This claim is brought against Envivio and the Individual Defendants.

39. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (b) caused Plaintiff and other members of the Class to purchase Envivio's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

40. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Envivio's securities in violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 thereunder. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

41. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Envivio's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary

CLASS ACTION COMPLAINT 13

1  in order to make the statements made about Envivio and its business operations and future
2  prospects in the light of the circumstances under which they were made, not misleading, as set
3  forth more particularly herein, and engaged in transactions, practices and a course of business
4  that operated as a fraud and deceit upon the purchasers of Envivio's securities during the Class
5  Period.

6        42.    The Individual Defendants' primary liability, and controlling person liability,
7  arises from the following facts: (a) the Individual Defendants were high-level executives,
8  directors, and/or agents at the Company during the Class Period and members of the Company's
9  management team or had control thereof; (b) each of these defendants, by virtue of his
10 responsibilities and activities as a senior officer and/or director of the Company, was privy to
11 information regarding the Company's historical revenue growth and the revenue from the
12 Company's Americas segment; and (c) each of these Defendants was aware of the Company's
13 dissemination of information to the investing public which they knew or recklessly disregarded
14 was materially false and misleading.

15       43.    Defendants had actual knowledge of the misrepresentations and omissions of
16 material facts set forth herein, or acted with reckless disregard for the truth in that they failed to
17 ascertain, verify and to disclose such facts, even though such facts were available to them.

18       44.    As a result of the dissemination of the materially false and misleading information
19 and failure to verify and disclose material facts, as set forth above, the market price of Envivio's
20 securities was artificially inflated during the Class Period. In ignorance of the fact that market
21 prices of Envivio's securities were artificially inflated, and relying directly or indirectly on the
22 misleading statements and Company press releases issued by Defendants, or upon the integrity of
23 the market in which the Company's securities trades, and/or on the absence of material adverse
24 information that was known to or recklessly disregarded by Defendants but not disclosed in
25 public statements by Defendants during the Class Period, Plaintiff and the other members of the
26 Class acquired Envivio securities during the Class Period at artificially high prices and were or
27 will be damaged thereby.
28 CLASS ACTION COMPLAINT          14

1     45.     At the time of said omissions and/or materially false and misleading statements, Plaintiff and other members of the Class were ignorant of their misleading nature, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's historical revenue growth; and the revenue from the Company's Americas segment, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Envivio securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

46.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

**Violation of Section 20(a) of
the Exchange Act Against the Individual Defendants**

48.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Envivio within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

50.     The Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or

CLASS ACTION COMPLAINT                                                                                           15

1 influence the particular transactions giving rise to the securities violations as alleged herein, and
2 exercised the same.

3      51.    As set forth above, the Individual Defendants each violated Section 10(b) and
4 Rule 10b-5 by their acts and omissions as alleged in this Complaint.

5      52.    By virtue of their positions as controlling persons, the Individual Defendants are
6 liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of
7 Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in
8 connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  February 28, 2014          SCOTT+SCOTT,
                                                  ATTORNEYS AT LAW, LLP

                                                  *s/* Hal D. Cunningham
                                                  HAL D. CUNNINGHAM

CLASS ACTION COMPLAINT                                      16

| | |
|---|---|
| 1 | hcunningham@scott-scott.com |
| | WALTER W. NOSS |
| 2 | wnoss@scott-scott.com |
| | 707 Broadway, Suite 1000 |
| 3 | San Diego, CA  92101 |
| | Telephone:  619/233-4565 |
| 4 | 619/233-0508 (fax) |

*Liaison Counsel for Plaintiff and the Putative Class*

Thomas J. McKenna
jmckenna@gme-law.com
Gregory M. Egleston
gegleston@gme-law.com
GAINEY McKENNA & EGLESTON
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone:  212/983-1300
212/983-0383 (fax)

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT                                              17

## CERTIFICATION OF NAMED PLAINTIFF

I, GARY SILVERBERG ("Plaintiff") hereby retain Gainey McKenna & Egleston and such co-counsel as appropriate, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff reviewed a copy of the complaint and is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in *Envivio, Inc.* security that is subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 100 | ENVI | Buy | 4/25/12 | $9.00 |
| 100 | ENVI | Buy | 7/31/12 | $6.00 |
| 200 | ENVI | Buy | 8/15/12 | $2.46 |
| 400 | ENVI | Buy | 9/21/12 | $2.18 |
| 200 | ENVI | Sell | 12/14/12 | $1.68 |
| 100 | ENVI | Buy | 9/16/13 | $3.25 |
| 350 | ENVI | Sell | 11/8/13 | $2.76 |
| 350 | ENVI | Sell | 11/8/13 | $2.89 |

Please list other transactions on a separate sheet of paper, if necessary.

Plaintiff has sought to serve as a class representative in the following cases within the last three years:

None.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of Feburary, 2014

_Gary Silverberg_
Signature

GARY SILVERBERG
Print Name (& Title if applicable)